UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICIA M. BROULLIRE,<br><br>    *Plaintiff*,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    *Defendant*. | Civil Action No. 25-1403 (TJK) |

## MEMORANDUM OPINION

Patricia Broullire alleges she was struck and injured by a car driven by Peter Ingle, a staffer for Congressman Brendan Boyle. She also alleges that Ingle was distracted at the time of the accident by Congressman Boyle, who was sitting in the front passenger seat. Broullire sued the two for several forms of negligence in D.C. Superior Court. The Attorney General's delegate then certified that the two were acting within the scope of their employment when the accident happened. So under the Westfall Act, the United States substituted itself as the sole defendant, removed the case here, and maintains that the suit should proceed as if brought against it under the Federal Tort Claims Act.

The United States now moves to dismiss for lack of subject matter jurisdiction because Broullire failed to exhaust her administrative remedies before suing. Broullire, for her part, moves to remand, arguing that Ingle and Congressman Boyle were not acting within the scope of their employment, and so the case should proceed where and against whom she originally filed it. The Court concludes that Ingle and Congressman Boyle were acting within the scope of their employment at the time of the accident, and that Broullire has not shown that jurisdictional discovery on the question is warranted. Thus, the Court will grant the motion to dismiss for lack of subject matter jurisdiction because Broullire failed to exhaust her administrative remedies.

I. **Background**

Broullire, a 68-year-old woman, alleges that in the early afternoon of March 1, 2023, she was walking with her coworker in Georgetown. ECF No. 1-1 ¶¶ 6–7, 9, 11–12. At the same time, Ingle, a staffer for Congressman Boyle, was allegedly parked in a "no parking zone" at Boyle's direction on the same street. *Id.* ¶¶ 9–10. As Broullire and her coworker walked behind the car, Ingle backed into them, allegedly distracted because of a conversation with Congressman Boyle, who was riding in the passenger seat. *Id.* ¶ 12. Ingle's car hit both Broullire and her coworker and allegedly did not stop until the coworker "began hitting the trunk of the vehicle and yelling for Mr. Ingle to stop the vehicle." *Id.* ¶ 15. Broullire alleges that she "was slammed to the pavement and knocked unconscious" and suffered "multiple physical, cognitive, and permanent injuries, including a crushed tibial plateau" and "a concussion." *Id.* ¶¶ 16–17.

In March 2025, Broullire sued Ingle and Congressman Boyle in D.C. Superior Court. *See* ECF No. 1-1 at 1, 12. She brought three claims: for negligence, gross negligence, and willful and wanton negligence. *Id.* ¶¶ 36–56. The Attorney General's delegate then certified that Ingle and Boyle were acting within the scope of their federal employment at the time of the event, so it substituted itself as the defendant for all claims against Ingle and Congressman Boyle, *see* ECF No. 2, and removed the case here. ECF No. 1 ¶ 4 (citing 28 U.S.C. § 2679(d)(2)). The United States now moves to dismiss because Broullire did not exhaust her administrative remedies by presenting her claims to the House of Representatives before suing, as required by the Federal Tort Claims Act ("FTCA"). ECF No. 3. Broullire moves to remand, arguing that Ingle and Congressman Boyle were not acting within the scope of their employment. ECF No. 10.

II. **Legal Standard**

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing the court's jurisdiction when it is contested. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). In evaluating such a motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). Whether a claim is barred by sovereign immunity is a question that goes to a court's limited subject matter jurisdiction, making it appropriate to raise in a Rule 12(b)(1) motion. *See, e.g.*, *Schindler Elevator Corp. v. WMATA*, 16 F.4th 294, 296 (D.C. Cir. 2021).

**III.   Analysis**

The parties appear to agree that both motions before the Court turn on the same question: whether Ingle and Congressman Boyle were acting within the scope of their employment when the accident happened. If they were, then Broullire's negligence claims are governed by the FTCA. *See* 28 U.S.C. § 2679(b)(1). And in that case, she is out of luck. The FTCA bars all negligence claims against the United States—in other words, it does not act as a waiver of sovereign immunity—"unless the [plaintiff] shall have first presented the claim to the appropriate Federal agency," in this case, the House of Representatives. § 2675(a). Broullire never claims she did. *See* ECF No. 3-1; ECF No. 10 (failing to dispute the United States's exhaustion argument). So the Court would have to dismiss the case of lack of subject matter jurisdiction. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). On the other hand, if Ingle and Congressman Boyle were not acting within the scope of their employment, remand would be proper, and the case could proceed against Ingle and Congressman Boyle. As explained below, the Court sides with the United States so it will dismiss the case.

Under an amendment to the FTCA passed in 1988 known as the "Westfall Act," "[t]he

Attorney General" is required to "defend any civil action or proceeding brought in any court against any employee of the [Federal] Government . . . for any such damage or injury." 28 U.S.C. § 2679(c). So when a plaintiff sues a federal employee, the employee "shall deliver . . . all process served upon him" to the Attorney General, *id.*, whose delegate may then issue a "certification . . . that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," *id.* § 2679(d)(2). Upon certification, the United States steps into the employee's shoes and "shall be substituted as the party defendant." *Id.*

A plaintiff may contest the scope-of-employment certification before a district court. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, (1995). So the certification "does not conclusively establish as correct the substitution of the United States as defendant." *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (quotation omitted). "But it does constitute *prima facie* evidence that the employee was acting within the scope of his employment." *Id.* "To rebut the certification and obtain discovery, a plaintiff must 'alleg[e] sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment.'" *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) (quoting *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003)). "If a plaintiff meets this pleading burden, he may, if necessary, attain 'limited discovery' to resolve any factual disputes over jurisdiction." *Id.* (quoting *Stokes*, 327 F.3d at 1214, 1216). "Not every complaint will warrant further inquiry into the scope-of-employment issue." *Stokes*, 327 F.3d at 1216. But if the plaintiff cannot satisfy her burden, then the substitution is taken as correct, and the suit "is governed by the Federal Tort Claims Act." *Ballenger*, 444 F.3d at 662.

The scope-of-employment analysis under the Westfall Act "is governed by District of Columbia law." *Stokes*, 327 F.3d at 1215. That law defines an employee's conduct as within the scope of his employment "if, but only if: (a) it is of the kind he is employed to perform; (b) it

4

occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master."[1] *Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346, 348 n.4 (D.C. 1987) (quoting Restatement (Second) of Agency § 228(1) (1957)).  The D.C. Court of Appeals has construed this test "very expansively," with even "seriously criminal and violent conduct," "including sexual harassment, a shooting, armed assault, and rape" being held to "fall within the scope of a defendant's employment under D.C. law." *Harbury v. Hayden*, 522 F.3d 413, 422 & n.4 (D.C. Cir. 2008) (collecting D.C. Court of Appeals cases).  For this reason, in the District of Columbia, "tort claims against federal government employees often proceed against the Government itself under the FTCA." *Id.* at 422 n.4.

In this case, the Attorney General's delegate has certified that Ingle and Congressman Boyle were acting within the scope of their employment at the time of the accident. ECF No. 1-2.  Thus, to rebut the certification and obtain discovery, Broullire has the burden to allege specific facts which, taken as true, would establish that the two were acting outside the scope of their employment.  She has not done so.

Broullire's alleged facts fall into several different categories.  First, she tries to rely merely on distance—both temporal and physical—between the accident and some of the Congressman's formal duties at the U.S. Capitol.  She alleges that the "the accident occurred in Georgetown during the middle of the day." ECF No. 10 at 9.  And she points out that the Budget Committee, of which Congressman Boyle was a member, did not meet that day, and the House of Representatives held its last vote that day before noon. *See* ECF No. 16 at 5.  Thus, she argues, the two could not have been acting within the scope of their employment.  Hardly.  After all, the accident occurred in

---

[1] The law also requires that "if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Moseley*, 534 A.2d at 348 n.4.  But Broullire does not allege that Ingle or Congressman Boyle injured her intentionally.

5

Washington, D.C. on a day the House of Representatives was in session. Common sense dictates that a congressman's duties are not as tightly constrained as Broullire suggests, as reflected by the Congressional Handbook's express acknowledgment that "official travel" can "include[] local travel" within the District of Columbia. *See* ECF No. 12 at 5. In the end, nothing about Ingle and Congressman Boyle's presence in Georgetown around lunchtime that day establishes or even supports an inference that they were acting outside "the authorized time and space limits" that they were "employed to perform" and "actuated, at least in part, by a purpose to serve [the United States]." *Moseley*, 534 A.2d at 348 n.4.

Second, Broullire attaches Federal Election Commission reports showing that Congressman Boyle's campaign committee received a few thousand dollars from four contributors on March 1, 2023. *See* ECF No. 16 at 6; ECF No. 16-2. She asks the Court to infer from these reports that Congressman Boyle was in Georgetown on that date to attend a campaign fundraiser. That is not a plausible inference flowing from the specific facts that she alleges. Even the handful of cherry-picked pages she attaches show that nothing about that date stands out; as reflected in just those pages, Congressman Boyle's committee also received contributions on eight other days around that time. Broullire also points out that one of the four contributors—others listed addresses in Illinois and New York—is an individual who listed a mailing address in the District of Columbia and who is also linked to another address in Georgetown. *See* ECF No. 16 at 6. This is grasping at straws. Nothing about the specific facts she alleges establishes or even supports an inference that Ingle and Congressman Boyle were in Georgetown that day for fundraising or campaigning reasons. And for what it is worth, the United States denies that such an event took place. ECF No. 12 at 6.

Third, Broullire tries a different tack, arguing that "it is not [Ingle's] official responsibility to chauffeur a member of Congress." ECF No. 10 at 10. But that Ingle was driving Congressman

6

Boyle in Washington, D.C. that afternoon does not imply that he was acting outside the scope of his employment. To begin, nothing suggests that Ingle's official duties or instructions did not include acting as a driver for his boss when needed. In any case, under D.C. law an employee's conduct is within the scope of his employment "if that conduct is either 'of the same *general* nature as' or '*incidental* to' the conduct authorized" by the employer. *Trump v. Caroll*, 292 A.3d 220, 230 (D.C. 2023) (emphases added). Thus, a police officer's discharge of his service revolver while off duty at a party was held to be within the officer's job-related duties because "[t]he weapon was necessary to his carrying out the mandate of his employer that he be in a constant state of readiness to take official action," and "[t]he act of unholstering it"—which caused the discharge—"was surely conduct incidental to that authorized." *District of Columbia v. Davis*, 386 A.2d 1195, 1203 (D.C. 1978). Put another way, any conduct that is an "outgrowth of the employee['s] instructions or job assignments" is considered conduct that he is employed to perform. *Carroll*, 292 A.3d at 231–32. Under that standard, nothing about Ingle's acting as a driver for Congressman Boyle suggests that he was not employed to perform that role.

Fourth, Broullire points out that she has alleged that Ingle and Congressman Boyle acted negligently in several specific ways. For example, she says that Congressman Boyle's official duties do not include "distracting Mr. Ingle." ECF No. 10 at 9–10. And, she claims, "[i]dling in a parked vehicle illegally . . . surely cannot be a governmental activity." ECF No. 16 at 5. These allegations do not help her either. As described above, the scope-of-employment test under D.C. law is whether the *type* of conduct at issue is an outgrowth of the person's job duties, regardless of whether some specific aspect of that conduct is alleged to have been negligent or tortious. Thus, when a congressman was sued for making allegedly defamatory statements during a phone call with a reporter, the D.C. Circuit, applying D.C. law, clarified that "[t]he appropriate question . . . is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of

7

conduct [the congressman] was employed to perform." *Ballenger*, 444 F.3d at 664.

Understood at the proper level of generality under the relevant test, Broullire's allegations of specific negligent conduct do not establish that Ingle and Congressman Boyle were acting outside the scope of their employment, or even create such an inference.  They do not suggest that the type of conduct at issue for Congressman Boyle—speaking to his staffer—was outside the scope of his official duties.  Nor do they show, for reasons already explained, that Ingle's "idling in a parked vehicle" while driving Congressman Boyle that day was not, at a minimum, an outgrowth of his job responsibilities.[2]

As her last redoubt, Broullire requests that if the Court "believes further facts are needed to resolve the United States' motion," she should first receive "leave to conduct limited jurisdictional discovery" before her suit is governed by the FTCA.  ECF No. 10 at 11.  She seeks "[a]t a minimum . . . all documents that relate to [Ingle and Congressman Boyle's] activities on March 1, 2023 including their personal and official calendars, credit card or bank records, and any personal or official text or email communications for that day."  *Id.*  Her request misunderstands the impact of the United States's certification and the weight of the burden she bears at this step. "[T]here is no right to even 'limited discovery' unless a plaintiff has made allegations sufficient to

---

[2] Broullire also points out that "Ingle's personal insurer (State Farm) accepted liability for the accident in writing" and that this "constitutes a waiver of . . . immunity under the Westfall Act." ECF No. 16 at 5 & n.1 (citing *Salus Corp. v. Cont'l Cas. Co.*, 478 A.2d 1067, 1069–70 (D.C. 1984)).  Of course, Ingle's personal insurer cannot waive sovereign immunity on behalf of the United States.  And the Westfall Act is a mandate to "[t]he Attorney General," who "shall defend any civil action or proceeding brought in any court against any employee of the Government" who acts within the scope of their employment.  28 U.S.C. § 2679(c).  The only relevant question at this point is whether Broullire has alleged specific facts which, taken as true, would establish that Ingle was acting outside the scope of his employment.  The actions of Ingle's personal insurer— and indeed, the ultimate wrongfulness of Ingle's conduct—have nothing to do with that question. Moreover, that Ingle was driving a car registered to his father is insufficient to establish that Ingle was acting outside the scope of his employment as well.

rebut the Government's certification." *Wuterich*, 562 F.3d at 386.  When, as here, there is an "absence of such allegations"—and when the "discovery demands appear to be nothing more than a fishing expedition for fact that *might* give rise to a viable scope-of-employment claim"—it would flip the Westfall Act's burden of proof "on its head" to permit discovery.  *Id.*  The Court declines to do so.[3]

## IV.   Conclusion

For all the above reasons, the Court will grant the United States's Motion to Dismiss, deny Broullire's Motion for Remand or in the Alternative, for Jurisdictional Discovery, deny Broullire's Motion Requesting Oral Argument, and dismiss the case.  A separate order shall issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 27, 2026

---

[3] Broullire also moves for a hearing on her motion.  ECF No. 17.  Whether to grant such a request is "within the discretion of the Court."  LCvR 78.1.  The Court denies this request because a hearing will not assist the Court's resolution of the motion, as the parties' filings sufficiently address the issues presented.